AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin


CLERK'S OFFICE
A TRUE COPY
Feb 26, 2021
s/ JeremyHeacox
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

United States of America
v.
Ricardo Valdez (xx-xx-1990)

*Defendant*

Case No. **21-M-349 (SCD)**

## ARREST WARRANT

To: Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)* Ricardo Valdez (xx-xx-1990),
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment  ☐ Superseding Indictment  ☐ Information  ☐ Superseding Information  ☑ Complaint
☐ Probation Violation Petition  ☐ Supervised Release Violation Petition  ☐ Violation Notice  ☐ Order of the Court

This offense is briefly described as follows:

Ricardo VALDEZ and others knowingly conspired with each other, and others known and unknown, to possess with the intent to distribute and distribute cocaine, a Schedule I controlled substance, all in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

Date: 2-26-21

*Issuing officer's signature*

City and state: Milwaukee, WI.

Honorable Stephen C. Dries
*Printed name and title*

**Return**

This warrant was received on *(date)* _____, and the person was arrested on *(date)* _____
at *(city and state)* _____.

Date: _____

*Arresting officer's signature*

*Printed name and title*

Case 2:21-cr-00058-LA   Filed 02/26/21   Page 1 of 18   Document 1

**This second page contains personal identifiers provided for law-enforcement use only and therefore should not be filed in court with the executed warrant unless under seal.**

*(Not for Public Disclosure)*

Name of defendant/offender:

Known aliases:

Last known residence:

Prior addresses to which defendant/offender may still have ties:

Last known employment:

Last known telephone numbers:

Place of birth:

Date of birth:

Social Security number:

Height:                                                                 Weight:

Sex:                                                                       Race:

Hair:                                                                      Eyes:

Scars, tattoos, other distinguishing marks:

History of violence, weapons, drug use:

Known family, friends, and other associates *(name, relation, address, phone number)*:

FBI number:

Complete description of auto:

Investigative agency and address:

Name and telephone numbers (office and cell) of pretrial services or probation officer *(if applicable)*:

Date of last contact with pretrial services or probation officer *(if applicable)*:

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin



| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Ricardo Valdez (xx-xx-1990) | ) | Case No. **21-M-349 (SCD)** |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **September 2017 - Present** in the county of **Milwaukee** in the **Eastern** District of **Wisconsin**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Sections 841(a)(1) and 846 | See attached affidavit |

This criminal complaint is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

*Complainant's signature*

DEA SA Kellen Williams
*Printed name and title*

Sworn via telephone; transmitted via email pursuant to Fed. R. Crim. 4.1

Date: **2-26-21**

*Judge's signature*

City and state: **Milwaukee, Wisconsin**   Honorable Stephen C. Dries
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Kellen J. Williams, being first duly sworn, hereby depose and state as follows:

## I. BACKGROUND, TRAINING, AND EXPERIENCE

1. I have been employed as a Special Agent with the Drug Enforcement Administration ("DEA") since September 2012. I am currently assigned to the DEA Milwaukee District Office, High Intensity Drug Trafficking Area ("HIDTA"). As such, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

2. I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1) and 846 (possession with intent to distribute a controlled substance and conspiracy to possess with intent to distribute a controlled substance), and other related offenses. I have been involved with various electronic surveillance methods, the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage and importation of controlled substances. I have participated in the execution of multiple federal search warrants.

3. I have received training in the area of narcotics investigations, money laundering, financial investigations and various methods that drug dealers use in an effort to conceal and launder the proceeds of their illicit drug trafficking enterprises. I have participated or assisted in numerous federal and state search warrants for narcotics related offenses, which have resulted in the seizure of United States currency, vehicles, real estate and jewelry from individuals involved in narcotic trafficking.

4. I have authored and/or aided in investigations that have led to the issuance of numerous search warrants involving violations of both state and federal narcotics laws. These warrants involved the search of locations including: residences of targets, their associates and relatives, "stash houses" (houses used as drug/money storage locations), storage facilities, bank safe deposit boxes, cellular/camera phones, and computers. Evidence, searched for, and recovered in these locations has included controlled substances, records pertaining to the expenditures and profits realized therefrom, monetary instruments, and various assets that were purchased with the proceeds of the drug trafficking.

5. Through training, experience, and discussions with other experienced agents:

a. I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin as well as in other areas of the United States;

b. I am familiar with the appearance and street names of various drugs, including marijuana, heroin, methamphetamine, cocaine, and crack cocaine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

c. I am familiar with the coded language utilized over the telephone to discuss drug trafficking and know that the language is often limited, guarded and coded. I also know the various code names used to describe controlled substances;

d. I know drug dealers often put telephones in the names of others (nominees) or obtain pre-paid cellular telephones from companies where no subscriber name or address is required in order to distance themselves from telephones that they use to facilitate drug distribution. Because drug traffickers go through many telephone numbers, they often do not pay final bills when they are done using a telephone number and then are unable to put another line in the name of that subscriber;

e. I know large-scale drug traffickers often purchase and/or title their assets in fictitious names, aliases or the names of relatives, associates or business entities to avoid detection of these assets by government agencies. I know that even though these assets are in names other than the drug traffickers, the drug traffickers actually own and continue to use these assets and exercise dominion and control over them;

f. I know large-scale drug traffickers must maintain on-hand, large amounts of U.S. currency in order to maintain and finance their ongoing drug business;

2

g.     I know it is common for drug traffickers to maintain books, records, receipts, notes, ledgers, airline tickets, receipts relating to the purchase of financial instruments and/or the transfer of funds, and other papers relating to the transportation, ordering, sale and distribution of controlled substances. That the aforementioned books, records, receipts, notes, ledgers, etc., are maintained where the traffickers have ready access to them;

h.     I know it is common for large-scale drug traffickers to secrete contraband, proceeds of drug sales and records of drug transactions in secure locations within their residences, their businesses and/or other locations over which they maintain dominion and control, for ready access and to conceal these items from law enforcement authorities or rival drug traffickers. These secure locations include, but are not limited to, safes, briefcases, purses, locked filing cabinets, and hidden storage areas in natural voids of a residence;

i.     I know it is common for persons involved in large-scale drug trafficking to maintain evidence pertaining to their obtaining, secreting, transfer, concealment and/or expenditure of drug proceeds, such as currency, financial instruments, precious metals and gemstones, jewelry, books, records of real estate transactions, bank statements and records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashier's checks, bank checks, safe deposit box keys and money wrappers. These items are maintained by the traffickers within residences, businesses or other locations over which they maintain dominion and control;

j.     I know large-scale drug traffickers often use electronic equipment such as telephones (land-lines and cell phones), pagers, computers, telex machines, facsimile machines, currency counting machines and telephone answering machines to generate, transfer, count, record and/or store the information described in the items above, as well as conduct drug trafficking activities;

k.     I know when drug traffickers amass large proceeds from the sale of drugs, the drug traffickers attempt to legitimize these profits through money laundering activities. To accomplish these goals, drug traffickers utilize the following methods, including, but not limited to: domestic and international banks and their attendant services, securities brokers, professionals such as attorneys and accountants, casinos, real estate, shell corporations and business fronts and otherwise legitimate businesses which generate large quantities of currency;

l.     I know drug traffickers commonly maintain addresses or telephone numbers in books or papers which reflect names, addresses and/or telephone numbers of their associates in the trafficking organization;

m.     I know drug traffickers take or cause to be taken photographs of themselves; their associates, their property and their drugs. These traffickers usually maintain these photographs in their possession; and

3

n. I know a "controlled buy" (and/or controlled contact) is a law enforcement operation in which an informant purchases drugs from a target. The operation is conducted using surveillance, usually audio and video taping equipment, and pre-recorded buy money. When an informant is used, he/she is searched for contraband, weapons, and money before the operation. The informant is also wired with a concealed body recorder and monitoring device. When the transaction is completed, the informant meets case agents at a pre-determined meet location and gives the purchased drugs and the recording/monitoring equipment to the case agents. The informant is again searched for contraband, weapons, and money. Additionally, all telephone calls made by the informant while under the direction and control of case agents are recorded.

6. In addition, during the course of such residential searches, I and other agents have also found items of personal property that tend to identify the person(s) in residence, occupancy, control, or ownership of the subject premises. Such identification evidence is typical of the articles people commonly maintain in their residences, such as canceled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, statements, identification documents, and keys.

## II. PURPOSE OF AFFIDAVIT

7. This affidavit is being submitted in support of a criminal complaint for David Valdez, for conspiracy to distribute cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

8. The statements in this affidavit are based on my personal knowledge, and on information I have received from other law enforcement personnel and from persons with knowledge regarding relevant facts. Because this affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to believe that in the State and Eastern District of Wisconsin, and elsewhere Arturo GUZMAN, Lorenzo GUZMAN, David RAMIREZ, Ricardo VALDEZ and

4

others knowingly conspired with each other, and others known and unknown, to possess with the intent to distribute and distribute cocaine, a Schedule I controlled substance, all in violation of Title 21, United States Code, Sections 841 (a)(1) and 846.

## II. PROBABLE CAUSE

8. Since September 2017, case agents have been investigating the drug trafficking and money laundering activities of Arturo GUZMAN, Lorenzo GUZMAN, David RAMIREZ, Ricardo VALDEZ and others.[1] Based on information from confidential sources, case agents identified the GUZMAN DTO as an organization that coordinates the transportation of cocaine, heroin, and methamphetamine from Mexico to Milwaukee, Wisconsin, as well as drug proceeds from the Milwaukee, Wisconsin, area to Chicago, Illinois, where it is believed to be wired to unknown bank accounts or bulk cash smuggled directly to unknown sources of supply based in Mexico.

9. In early March 2019, case agents met with a confidential source ("CS-1") in Milwaukee, WI. CS-1 stated David RAMIREZ is a runner for a family-run operation. According to CS-1, RAMIREZ's family members, including Arturo and Lorenzo GUZMAN (GUZMAN DTO), are involved in a large-scale cocaine, heroin, and methamphetamine trafficking organization in Milwaukee. CS-1 further stated s/he has purchased distribution quantities of cocaine from RAMIREZ in the past.

10. Case agents believe that CS-1's information is credible and reliable for the following reasons. First, CS-1 has given case agents detailed and corroborated information concerning numerous individuals involved in drug trafficking and money laundering, which case

---

[1] Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

agents have independently verified. CS-1 has provided information against CS-1's penal interest in that CS-1 has admitted his/her involvement in drug trafficking activities in the past. CS-1 is cooperating with case agents in hope for favorable consideration regarding a State of Wisconsin criminal drug case. The case was later dismissed. Finally, CS-1 has had an adequate opportunity to directly observe the events discussed and has heard conversations directly from the individuals discussed herein. CS-1 has a misdemeanor conviction for endangering safety while armed with controlled substances in s/he blood.

11. Case agents queried various law enforcement databases regarding the GUZMAN DTO members and discovered that going back to at least 2010, multiple co-conspirators have been found in possession of controlled substances, including cocaine and heroin, as well as bulk currency. For example, based on law enforcement databases, case agents learned that Arturo GUZMAN was arrested in Philadelphia, Pennsylvania in 2010. On December 7, 2010, Philadelphia Police Department Officers conducted a traffic stop of a Nissan Armada. Arturo GUZMAN was located in the rear driver's side of the vehicle. Officers recovered an object wrapped in plastic that field-tested positive for the presence of heroin. Pursuant to the execution of a search warrant, officers recovered two rectangular bricks containing a white powdery substance, which field-tested positive for the presence of cocaine. In total, officers seized approximately 200 grams of heroin and approximately one kilogram of cocaine. Arturo GUZMAN was convicted and sentenced to 120 months' imprisonment.

**A. Purchases of Cocaine and Heroin from David RAMIREZ**

12. In early March 2019, at the direction of case agents, CS-1 set up a controlled buy of cocaine from David RAMIREZ. On this date, case agents observed RAMIREZ exit his residence at 7001 West Bennett Avenue, Milwaukee, Wisconsin, enter a yellow Nissan 350Z, and

6

leave the area. Case agents observed RAMIREZ meet with CS-1 in Milwaukee, Wisconsin, to conduct the transaction.

13. Case agents followed CS-1 directly to a predetermined location where CS-1 gave agents a vacuum-sealed bag containing a large amount of suspected cocaine weighing over 100 grams. The cocaine later tested positive for the presence of cocaine and methamphetamine. CS-1 positively identified RAMIREZ as the person who provided the CS with cocaine. Case agents also positively identified RAMIREZ from his State of Wisconsin driver's license photograph.

14. Over the next few months, case agents conducted three additional controlled buys of cocaine from RAMIREZ. In each occasion, CS-1 received a large amount of suspected cocaine weighing over 100 grams.

15. In December 2019, at the direction of case agents, the CS set up a controlled buy of heroin from David RAMIREZ. On this date, case agents observed RAMIREZ exit his residence at 7001 West Bennett Avenue, Milwaukee, Wisconsin, enter a blue Mercedes sedan, and leave the area. Case agents observed RAMIREZ meet with CS-1 in Milwaukee, Wisconsin, to conduct the transaction and later return to his residence

16. Case agents followed CS-1 directly to a predetermined location where CS-1 gave agents a vacuum-sealed bag containing a large amount of suspected heroin weighing over 100 grams. The heroin later field tested positive for the presence of heroin.

**B. Anonymous DEA Tip**

17. On March 26, 2019, at 1:53 p.m., DEA received an anonymous tip via the DEA.gov website, stating, "cocaine ring marijuana and lsd angel lezama lenny maria moves alot of cash and drugs had treated (threatened) if i say anything attic is where most of the cocaine and money is firearms and other gang members on premesis they also bring stolen cars from chicago to

7

milwaukee and travel to chicago for other drugs". The location the tipster reported was 1913 S Layton Blvd upper, Milwaukee.

18. Case agents are aware 1913 South Layton Boulevard does not exist. However, case agents believe 1919 South Layton Boulevard, Milwaukee is part of the GUZMAN DTO. A search of City of Milwaukee property records indicate 1917/1919 South Layton Boulevard is owned by Jerman Ruiz, a frequent contact of Arturo GUZMAN.

19. On March 27, 2019, case agents conducted surveillance at 1919 South Layton Boulevard. At 9:00 a.m., case agents observed a white Ford Transit Van, Wisconsin license plate NA8743, parked in the alleyway between South Layton Boulevard and South 28th Street. The vehicle is registered to Ideal Group LLC at 3008 S. 8th St, Milwaukee, WI. The white van was parked along the rear garage for 1917/1919 South Layton Boulevard. At 9:35 a.m., case agents observed Ricardo VALDEZ, wearing glasses, a black shirt, black vest and blue jeans carry a large duffel bag and put it in the back of the white van. VALDEZ left the area driving the white van and was followed to another residence, 10531 West Oklahoma Avenue, Milwaukee, that case agents believe it used as another stash location. At 10:32 a.m., case agents observed VALDEZ and an unknown Hispanic male retrieve several large duffle bags from the white van and bring them into the residence. At 10:51 a.m., VALDEZ and the unknown Hispanic male re-entered the white van and left driving eastbound on Oklahoma. Based on their training and experience, and the investigation to date, case agents believe the GUZMAN DTO was aware of the anonymous tip and moved drugs and currency to another location.

C. Milwaukee Surveillance

20. On May 20, 2019, case agents conducted surveillance of David RAMIREZ. At 1:09 p.m., case agents observed RAMIREZ driving a yellow Nissan 350Z park on West Grant

8

Street, just west of South Muskego Avenue. At 1:22 p.m., the court authorized pen register trap and trace showed an outgoing call from RAMIREZ's (773) 876-9342 to (414) 888-9816. At 1:25 p.m., case agents observed RAMIREZ move the yellow Nissan 350Z to a parking spot in front of a store at 2194 West Muskego Avenue, Milwaukee, Wisconsin, a commercial building belonging to Smart Drywall, LLC, which is owned by Arturo GUZMAN. At 1:26 p.m., case agents observed Ricardo VALDEZ cross Muskego Avenue and walk up to RAMIREZ in front of 2194 West Muskego Avenue. Case agents observed VALDEZ unlock the white security gate at 2194 and enter the property. RAMIREZ waited out front. At 1:32 p.m., Arturo GUZMAN arrived at the business. GUZMAN and RAMIREZ then entered the property at 2194. Based on their training and experience, and the investigation to date, case agents believe that RAMIREZ used (773) 876-9342 to call VALDEZ (414) 888-9816 and advise VALDEZ that he had arrived at 2194 West Muskego Avenue.

21. On May 21, 2019, case agents conducted surveillance at 2194 South Muskego Avenue, Milwaukee. At 1:01 p.m., case agents observed RAMIREZ park his previously observed yellow Nissan 350Z on South Muskego Avenue, in the vicinity of 2194. At 1:58 p.m., case agents observed Arturo GUZMAN arrive at the building. GUZMAN, RAMIREZ and an unidentified Hispanic met and went inside the building. At 2:26 p.m., case agents observed a gold Chevy Impala, WI registration ABJ6332, park on South Muskego Avenue in front of the building. Case agents observed Ricardo VALDEZ, wearing a black jacket with white hood, exit the passenger side and a co-conspirator, wearing a brown jacket and jeans, exit the driver's side of the Impala. VALDEZ exited the Impala with a box and went inside the building. The co-conspirator met with GUZMAN and retrieved several boxes from the trunk of the Impala and went inside the building.

22. At 2:27 p.m., case agents observed RAMIREZ, carrying a black laptop style bag,

exit the building and put the bag in the trunk of his yellow Nissan 350Z. At 2:28 p.m., RAMIREZ left the area driving northbound on South Muskego Avenue. Agent followed RAMIREZ and observed RAMIREZ meet with a known drug customer.

23. At 2:40 p.m., case agents observed VALDEZ in front of the building at 2194 South Muskego Avenue. At the same time, case agents placed an undercover call to (414) 888-9816. Case agents observed VALDEZ retrieve a cellphone from his pocket, look at the phone, and answer it. The UC agent heard three rings, and then a male answer the phone and hung up. Case agents believe (414) 888-9816 is used by VALDEZ because the phone number previously was in contact with RAMIREZ's prior telephone, (773) 876-9342, on May 20, 2019 when RAMIREZ was waiting to enter the building at 2194 West Muskego Avenue, Milwaukee. Furthermore, the phone is subscribed to "Company Phone" at "5919 s 54th st Milwaukee WI 53219." Case agents are aware that Ideal Group is located at 1959 South 54th Street, Milwaukee, Wisconsin. Based on these observations, case agents believe VALDEZ was using (414) 888-9816 at that time.

### D. Search Warrant of the Residence of David RAMIREZ

24. On May 26, 2020, the Honorable Judge William E. Duffin, United States Magistrate Judge in the Eastern District of Wisconsin, signed a search warrant authorizing the search of 7001 W. Bennett Ave, Milwaukee, WI, the residence of David RAMIREZ.

25. On May 27, 2020, at approximately 6:03 a.m., case agents served the warrant at RAMIREZ's residence. RAMIREZ was present at the location and arrested by agents. During a search of the residence, agents seized $58,249 US currency, 870 grams of suspected marijuana, 108 cartridges of cannabis oil, 1.68 grams of suspected cocaine, six firearms and other items.

26. On June 16, 2020, a grand jury in this district returned an indictment charging RAMIREZ with conspiracy to distribute heroin and cocaine, in violation of 21 U.S.C. §§ 841(a)(1),

(b)(1)(A), and 846, and 18 U.S.C. § 2, and possession of firearms in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A)(i).

### E. CS-2 and Controlled Purchases from Ricardo VALDEZ

27. In January 2020, case agents met with CS-2 in Milwaukee, WI, regarding the drug trafficking activities of Ricardo VALDEZ. CS-2 stated s/he first met "Alain" in October or November 2019. CS-2 was shown a photograph of Ricardo VALDEZ, and positively identified him as "Alain". CS-2 stated VALDEZ used to live in the area of South 27th Street and West Burnham Avenue, but have since moved to the upper apartment at 1561 W. Windlake Ave, Milwaukee, WI. CS-2 stated VALDEZ would often drive a blue Ford Transit Van.

28. CS-2 stated s/he has done 10-15 drug deals with VALDEZ, all occurring in VALDEZ's apartment at 1561 W. Windlake. CS-2 purchased between 1/2 ounce - 1 ounce of cocaine each time as $600 per 1/2 ounce. CS-2 stated s/he was also offered samples of heroin and crystal methamphetamine from VALDEZ but did not accept them.

29. Case agents believe that CS-2's information is credible and reliable for the following reasons. First, CS-2 has given case agents detailed and corroborated information concerning numerous individuals involved in drug trafficking, which case agents have independently verified. CS-2 has conducted more than five supervised controlled narcotics buys. CS-2 has worked with Law Enforcement providing information that led to a residential search warrant, the arrest of two individuals and the recovery of narcotics and firearms further leading to charges filed in State of Wisconsin Circuit Court, case pending. CS-2 has provided information against CS-2's penal interest in that CS-2 has admitted his/her involvement in drug trafficking activities in the past. CS-2 is cooperating with case agents in hope for favorable consideration regarding a State of Wisconsin criminal drug case which has since resolved with a

guilty plea and time served. CS-2 is now cooperating, working with and providing information to law enforcement for monetary gain. Finally, CS-2 has had an adequate opportunity to directly observe the events discussed and has heard conversations directly from the individuals discussed herein. CS-2 has a criminal felony convictions for possession with the intent to deliver heroin, second subsequent offense, Maintain drug trafficking place, vehicle operator flee/elude officer.

30. On January 21, 2020, at the direction of case agents, CS-2 set up a controlled buy of cocaine from Ricardo VALDEZ. CS-2 went to 1561 W. Windlake Avenue, Milwaukee, WI, and purchased approximately 14.10 grams of suspected cocaine directly from VALDEZ. The suspected cocaine later field tested positive for the presence of cocaine.

31. On March 31, 2020, at the direction of case agents, CS-2 set up a controlled buy of cocaine from Ricardo VALDEZ. CS-2 went to 1561 W. Windlake Avenue, Milwaukee, WI, and purchased approximately 27.94 grams of suspected cocaine directly from VALDEZ. The suspected cocaine later field tested positive for the presence of cocaine.

32. On April 15, 2020, at the direction of case agents, CS-2 set up a controlled buy of cocaine from Ricardo VALDEZ. CS-2 went to 1561 W. Windlake Avenue, Milwaukee, WI, and purchased approximately 27.72 grams of suspected cocaine directly from VALDEZ. The suspected cocaine later field tested positive for the presence of cocaine.

33. On July 6, 2020, at the direction of case agents, CS-2 set up a controlled buy of Oxycodone pills from Ricardo VALDEZ. CS-2 was directed to the alleyway between South 27th St and South 28th Street, between West Burnham Street and West Rogers Street, and purchased 50 suspected Oxycodone pills directly from VALDEZ in a vehicle. Case agents are aware that this alleyway is directly behind 1919 S. Layton Blvd, the location of the aforementioned DEA tip.

F. **Cooperating Defendant Information**

34. In August 2020, case agents debriefed a cooperating defendant (CD-1) regarding the drug trafficking activities of the GUZMAN DTO. CD-1 stated Arturo and Lorenzo GUZMAN were involved a large scale cocaine and heroin trafficking organization in Milwaukee, WI. CD-1 stated s/he was directed by both Arturo GUZMAN and Lorenzo GUZMAN, and assist in the transportation and distribution of cocaine and heroin in Wisconsin and Illinois. CD-1 positively identified a photograph of VALDEZ as "Alain," and stated he is possibly a cousin of the GUZMAN's and does errands for them, including being a courier of drugs and money.

35. In November 2020, case agents debriefed a cooperating defendant (CD-2) regarding the drug trafficking activities of the GUZMAN DTO. CD-2 admitted that s/he was previously a courier for the GUZMAN DTO and would transport cocaine from Chicago to Milwaukee on behalf of both Lorenzo GUZMAN and Arturo GUZMAN. CD-2 stated in around 2017-2018, s/he would drive the cocaine to a house located at South 8th Street and West Manitoba Street in Milwaukee that the GUZMANs owned. CD-2 stated at that time Arturo GUZMAN lived in the upper unit of the residence and would store cocaine in the closet. CD-2 stated GUZMAN's sister and David RAMIREZ lived the lower unit of the residence. CD-2 also positively identified a photograph of VALDEZ and stated he is a courier for the GUZMAN DTO. Based on their training and experience, and the investigation to date, case agents believe that GUZMAN was living at **3008A South 8th Street, Milwaukee, Wisconsin.**

G. Recent Controlled Purchase from VALDEZ

36. In February 2021, case agents again met with CS-2. CS-2 stated s/he had recently been in contact with Ricardo VALDEZ via text message from telephone number (414) 239-1829. CS-2 stated VALDEZ offered the CS cocaine, at a price of $1500 per ounce. VALDEZ told CS-2 he is currently living in the area of South 8th Street and West Manitoba Street in Milwaukee.

13

Based on their training and experience, and the investigation to date, case agents believe that VALDEZ is living at **3008A South 8th Street, Milwaukee, Wisconsin.**

37. According to publicly available property records, **3008 South 8th Street, Milwaukee, Wisconsin** is a duplex owned by Lorenzo GUZMAN. Lorenzo GUZMAN purchased **3008A South 8th Street, Milwaukee, Wisconsin** from Arturo GUZMAN, who had owned the property since 2008.

38. On February 24, 2021, case agents directed CS-2 to conduct a controlled purchase of cocaine from VALDEZ. CS-2 contacted VALDEZ via text message and VALDEZ directed the CS to come to the area of South 8th Street and West Manitoba Street in Milwaukee. At 2:28 p.m., CS-2 arrived at the intersection and called VALDEZ. VALDEZ told the CS his address was **3008A South 8th Street, Milwaukee, Wisconsin.** CS-2 walked along the south side of the residence and entered the rear door facing east. CS-2 met with VALDEZ and walked upstairs to the upper unit, **3008A South 8th Street, Milwaukee, Wisconsin**. VALDEZ led CS-2 to the kitchen of the residence. In the kitchen, VALDEZ gave CS-2 several plastic baggies containing suspected cocaine. CS-2 weighed the cocaine, and found it to be short of the agreed amount of 2 ounces. CS-2 observed VALDEZ retrieve more suspected cocaine from a kitchen cabinet and give it to the CS. CS-2 handed VALDEZ $2,840 in pre-recorded U.S. currency. CS-2 then departed the residence.

39. Case agents followed CS-2 directly to a predetermined location where CS-2 gave agents a plastic bag containing suspected cocaine weighing approximately 59.5 grams. The suspected cocaine later field tested positive for the presence of cocaine. CS-2 told case agents that s/he observed approximately a half kilogram of cocaine in the kitchen cabinet of **3008A South 8th Street, Milwaukee, Wisconsin**. Case agents reviewed the recording of the controlled buy and

determined that it is consistent with CS-2's version of events.

### H. Search Warrant at 3008A South 8th Street, Milwaukee, Wisconsin

40. On February 25, 2021, the Honorable Stephen Dries, United States Magistrate Judge, issued a search warrant for **3008A South 8th Street, Milwaukee, Wisconsin**.

41. On February 26, 2021, case agents executed the search warrant at **3008A South 8th Street, Milwaukee, Wisconsin**. Case agents recovered 3.9 grams of suspected heroin and 27.7 grams of suspected marijuana in the kitchen cabinet. Case agents also recovered approximately $2,700 U.S. currency comprised of 41 bills. Review of DEA records reflects that 38 bills, were pre-recorded law enforcement funds.

42. After being advised of and waiving his rights, Valdez admitted to distributing 2 ounces of a controlled substance to CS-2 on February 25, 2021. He also admitted to selling cocaine. However, Valdez stated that the substance was heroin. Case agents have sent the controlled substance to the DEA North Central laboratory and are awaiting the results. Finally, Valdez admitted to being a citizen of Mexico and being present in the United States illegally.

## IV. CONCLUSION

43. Based on the facts contained within this affidavit, I believe that probable cause exists to believe that in the State and Eastern District of Wisconsin, and elsewhere David RAMIREZ, Arturo GUZMAN, Lorenzo GUZMAN, David RAMIREZ, Ricardo VALDEZ and others knowingly conspired with each other, and others known and unknown, to possess with the intent to distribute and distribute cocaine, a Schedule I controlled substance, all in violation of Title 21, United States Code, Sections 841 (a)(1) and 846.